IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS HAUSCHILD, | No. C 15-01556 WHA |
| Plaintiff, | |
| v. | **ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| CITY OF RICHMOND AND CHRISTOPHER MAGNUS, | |
| Defendants. | |

## INTRODUCTION

In this wrongful-termination action brought by a police officer under the California Public Safety Officers Bill of Rights, his motion for partial summary judgment is **DENIED** and defendants' motion for summary judgment is **GRANTED IN PART**.

## STATEMENT

The undisputed facts are as follows. Plaintiff Thomas Hauschild began working as a police officer for defendant City of Richmond in 2005. Plaintiff, who is Asian, served as a detective, a member of the SWAT team, and as a firearms instructor.[1] Between 2006 and 2012, plaintiff's former spouse, who also worked for the City of Richmond, made several domestic abuse complaints against plaintiff. In response, plaintiff notified the City of these complaints (Hauschild Decl ¶ 3). The Police Department investigated one of these incidents, an incident

---

[1] Plaintiff is of Japanese and Caucasian descent (Hauschild Dep. at 76).

1  that took place at a 2007 Christmas party, and concluded that the complaint was unfounded
2  (Poore Decl., Exh. B).

3       On September 23, 2012, plaintiff and his wife fought. Both suffered physical injuries to
4  their faces and bodies (Hauschild Decl. ¶ 4; Poore Decl., Exh. A). The City initiated an internal
5  affairs investigation of plaintiff covering past abuse incidents occurring between 2006 and
6  2012. Investigators questioned plaintiff about them. The investigation concluded on September
7  18, 2013 (almost one year after the fight). The investigator, Sergeant Albert Walle, made the
8  following four findings: (1) plaintiff was the "primary aggressor" in the September 2012
9  domestic violence incident; (2) plaintiff placed a condom on his wife's door the day after the
10 incident; (3) plaintiff illegally purchased eight firearms and stored them in his workspace; and
11 (4) plaintiff made false statements to a supervisor during the investigation (Poore Decl., Exh.
12 A).

13      On September 24, 2013, plaintiff received a *Skelly* hearing notice regarding the
14 termination of his employment. Defendant Police Chief Christopher Magnus became the
15 hearing officer (*id.* at ¶ 6; Dickerson Decl., Exh. E). After the hearing, Magnus recommended
16 termination of plaintiff. Magnus' recommendation stated that each of the charges, standing
17 alone, warranted dismissal. Moreover, his conclusion stated (Dickerson Decl., Exh. E at 3):

> the evidence collected regarding the September 23, 2012 incident, six years of domestic abuse of [plaintiff's wife] leading up to this incident, and Officer Hauschild's defacement of [plaintiff's wife's] property after the incident, conclusively proved that Officer Hauschild was the primary aggressor on September 23, 2012, and battered [plaintiff's wife] in a jealous rage after finding text messages from another officer on her mobile phone.

The recommendation also stated that the evidence showed plaintiff to be the primary aggressor during the September 2012 incident, "even without any consideration of the prior allegations of domestic abuse" (*id*. at 7). The Richmond City Manager, Bill Lindsay, reviewed the Skelly recommendations from Magnus, and made his own determination to terminate Officer Hauschild. The City then terminated plaintiff's employment. (Lindsay Decl., Exh. B)

       The parties disagree about the following facts. Plaintiff submits a declaration that Magnus "began inappropriately touching" plaintiff's body on one occasion in 2009 and that plaintiff later reported the incident to his supervisor, Lieutenant Arnold Threets (Hauschild

2

Decl. ¶ 8). Defendants submit declarations that no sexual advance ever took place and that plaintiff also never reported any incident to Threets (Magnus Decl. ¶¶ 6–7; Threets Decl. ¶¶ 3).

Plaintiff submits testimony that Magnus has made discriminatory remarks towards African-Americans and Latinos. Lieutenant Arnold Threets, former supervisor to plaintiff, testified that, on a first-hand basis, he heard Magnus refer to African-American officers as "jigaboos," and say "dance, jigaboo, dance" when referring to an African-American (Threets Dep. at 71–81). He also heard Magnus refer to Latinos as "Joses" (*ibid*.) and say that, "If you're going to try to take me out, you better succeed, because a wounded animal is more dangerous than a dead one" (*id.* at 78–79). He also heard Magnus say, "I'm more comfortable around people who look like, act like, and talk like me, so I might as well just be a racist" (*id.* at 79–81). Another officer heard Magnus say that the Juneteenth holiday was a holiday for shooting people (Gagan Dep. at 58–60). Plaintiff also submits testimony that Magnus demanded that he lie in connection with an investigation into a racial discrimination complaint in 2011 (Hauschild Decl. ¶ 10). In a declaration, Magnus denies ever asking plaintiff to make an untrue statement (Magnus Decl. ¶ 12).

Plaintiff filed his first amended complaint in May of 2015, alleging six separate claims related to the termination of his employment: (1) violation of the First, Fifth, and Fourteenth Amendments under Section 1983; (2) discrimination in violation of Fair Employment and Housing Act (FEHA); (3) retaliation in violation of FEHA; (4) harassment in violation of FEHA; (5) violation of the California Constitution; and (6) violation of the Public Safety Officers Procedural Bill of Rights (POBR). Plaintiff later dropped claim four (harassment) and claim five (violation of the California Constitution). A prior order denied defendants' motion for partial summary judgment, concluding that a reasonable trier of fact could conclude that defendants violated POBR's one-year statute of limitations (Dkt. 50).

Plaintiff filed for partial summary judgment as to his POBR claim and Section 1983 due process claim. Defendants filed for summary judgment on all claims.

3

## ANALYSIS

**1. MOTION FOR SUMMARY JUDGMENT.**

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(c). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### A. POBR Claim.

The California Public Safety Officers Procedural Bill of Rights provides that "no punitive action . . . shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery." Cal. Govt. Code Section 3304(d)(1). Section 3304(d)(2)(A) tolls the one-year statute of limitations during the pendency of a criminal investigation. The California Supreme Court has held that the purpose of this statute is "to ensure that an officer will not be faced with the uncertainty of a lingering investigation, but will know within one year of the agency's discovery of the officer's act or omission that it may be necessary for the officer to respond in the event he or she wishes to defend against possible discipline." *Mays v. City of Los Angeles*, 43 Cal. 4th 313, 322 (2008).

During the investigative interview of plaintiff, internal affairs investigator Walle asked numerous questions about incidents that occurred well beyond the one-year statute of limitations. These included inquiries into domestic incidents which occurred in 2007, 2009, 2010, and 2011 (Wilkinson Decl., Exh. A at 29–48). Moreover, defendant Magnus' recommendation following the *Skelly* hearing made several references to these previous incidents. Specifically, Magnus' memorandum stated that, among other things, plaintiff's "six years of domestic abuse of [plaintiff's wife] . . . conclusively proved that Officer Hauschild was the primary aggressor on September 23, 2012" (Dickerson Decl., Exh. E at 3). Magnus also considered that plaintiff "was able to provide detailed accounts" regarding the incident on September 23, 2012 and other domestic violence incidents dating back several years (*ibid*).

4

Defendants argue that all evidence points to the conclusion that the punitive action against plaintiff arose solely from the incident on September 23, 2012. Defendants contend that the above quoted passages from the Magnus memorandum were contained in the "Summary of Charges" section and were not mentioned in the "Discussion" section, which supposedly contained the analysis and recommendation. Specifically, defendants point out that in the "Discussion" section, Magnus stated (*id*. at 7):

> The evidence collected during the investigation supports the investigator's finding that Officer Hauschild was the primary aggressor during the incident on September 23, 2012, even without any consideration of the prior allegations of domestic abuse by [plaintiff's wife] against Officer Hauschild.

Moreover, in discussing the four separate charges — the domestic violence incident, the placement of the condom on the door handle, the unregistered firearms, and lying to investigators — Magnus determined that each of these charges, standing alone, warranted termination of employment.

Thus, defendants argue, because the discussion of the "six years of domestic abuse" only appeared in the "Summary of Charges" section and because Magnus explicitly stated that the incident on September 23, 2012, had been sufficient (in and of itself) without consideration of prior incidents, no issue of material fact exists as to whether defendants took punitive action based on old misconduct.

Defendants' assertion, that the old conduct played no role in the termination decision, may very well be true. That, however, must be determined by the trier of fact. A reasonable trier of fact could find that based on the several references to past events in the Magnus memorandum, and based on the questions regarding old incidents raised in the investigatory interview, that the City actually gave weight to these old events in making its termination decision. While Magnus stated that the evidence showed plaintiff was the primary aggressor even *without* any consideration of the prior allegations of domestic abuse, the recurring reference to those events throughout the process raises an inference, even if remote, that plaintiff's past came back to haunt him. From the fact that a substantial portion of the investigation focused on plaintiff's conduct from 2006–2011, along with the fact that Magnus' memorandum discussed the prior instances multiple times, a reasonable trier of fact could find

1 that defendants' punitive actions were based on conduct that occurred beyond POBR's one-year
2 statute of limitations.

3 With its motion, defendants submit new declarations in an attempt to show that the
4 termination was not based on acts outside the one-year statute of limitations. In a declaration,
5 Magnus avers that he believes plaintiff was the primary aggressor on September 23, 2012
6 regardless of any prior allegations of domestic abuse (Magnus Decl. ¶ 18). In a declaration, the
7 City Manager Lindsay states that he did not base any part of his termination decision upon the
8 statement that there had been a long-standing history of domestic abuse (Lindsay Decl. ¶ 8.)
9 These after-the-fact statements do not cure the underlying issue.

10 At the hearing on June 23, defendants' counsel asserted that plaintiff himself had
11 requested that the investigator examine the prior incidents to show a pattern of lying and
12 aggression on the part of his former spouse. That is, counsel said plaintiff himself invited an
13 examination into the forbidden time zone. Counsel, however, could not point to a particular
14 document that showed plaintiff had made this request. After the hearing, defendants submitted
15 an email from plaintiff's counsel in an attempt to show plaintiff had made this request. The
16 email attached a letter from plaintiff's counsel to the District Attorney outlining the former
17 spouse's history of aggressive conduct. The email did not expressly invite the department to
18 investigate incidents older than a year. This will have to remain a point of contention for trial.

19 This order, like the prior order, concludes that a reasonable trier of fact could find (and
20 could refuse to find) that defendants took punitive action against plaintiff for events occurring
21 earlier than the POBR's one-year statute of limitations. Defendants' motion for summary
22 judgment as to plaintiff's POBR claim is **DENIED**.

23 If we were writing on a clean slate, the Court would be inclined to hold that, under the
24 POBR, events older than one year may be considered solely for the purposes of the credibility
25 of the officer (as well as the complaining witness), but that no officer may be punished or
26 disciplined for alleged misconduct older than one year. For example, the first time an officer
27 gives an explanation it may seem plausible but as the same scenario recurs year after year, the
28 same explanation may sour. Thus, in this case, it would have been permissible for the

reviewing officer to limit the consideration of older events solely to credibility of the officer in question so long as he was punished for nothing more than events within the one-year period. Unfortunately, there is no definitive case law on this point — at least counsel have failed to supply any. More than that, on the particular facts of this case, the memorandum mentioned events outside the one-year period in such a way as to allow a trier of fact to reasonably conclude that defendant was punished for older events and that the older events were not limited to credibility. Of course, a trier of fact could very reasonably conclude the plaintiff was *not* punished for anything older than one year, and in fact that may be the best reading of the memorandum. Nevertheless, it is not the only reasonable reading, and the trier of fact will have to decide.

This order concludes that summary judgment for the plaintiff is also inappropriate. In his memorandum, Magnus stated that he had determined that each of these charges, standing alone, warranted termination of employment. Moreover, the memorandum concluded that the evidence showed plaintiff was the primary aggressor even *without* any consideration of the prior allegations of domestic abuse. A reasonable trier of fact could conclude that defendants' termination of plaintiff was *not* based on acts outside the one-year limitations. Plaintiff's motion for summary judgment as to his POBR claim is **DENIED**.

### B. FEHA Claims.

#### (1) *FEHA Discrimination Claim.*

Under FEHA, an employer may not, because of a person's race, discharge the person from employment or discriminate against the person in compensation or in terms, conditions, or privileges of employment. Cal. Gov't Code § 12940(a). To evaluate whether a party has proven discrimination in violation of FEHA, California courts use the burden-shifting test established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 354 (2000).

The test requires a plaintiff to first establish a prima facie case of discrimination by "offering evidence that give[s] rise to an inference of unlawful discrimination." *E.E.O.C. v. Boeing Co.*, 577 F.3d 1044, 1049 (9th Cir. 2009). If a plaintiff has established a prima facie

7

1  discrimination claim, the burden shifts to the defendant to articulate a legitimate
2  nondiscriminatory reason for the adverse employment action. If the defendant articulates such a
3  reason, a plaintiff may defeat summary judgment by offering direct or circumstantial evidence
4  that a discriminatory reason more likely motivated the employer to take the adverse
5  employment action or that the employer's proffered explanation is unworthy of credence and a
6  pretext for discrimination. *Surrell v. California Water Serv. Co.,* 518 F.3d 1097, 1106 (9th Cir.
7  2008).

8      In his opposition to defendants' motion for summary judgment, plaintiff asserts an
9  entirely new theory of discrimination. Plaintiff argues that his former spouse committed the
10 same alleged conduct as plaintiff — she engaged in battery and destruction of plaintiff's
11 property and admitted to lying regarding a 2007 incident — but the City did not discipline her.
12 Plaintiff contends this demonstrates the City engaged in gender discrimination against him.[2]

13     Plaintiff's new theory of discrimination is not reflected in the First Amended Complaint.
14 A plaintiff may not raise new theories for the first time on summary judgment this late in
15 litigation. *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006). This order
16 finds that plaintiff failed to provide defendants with adequate notice of these allegations.
17 Plaintiff's new theory will be disregarded.

18     What remains is plaintiff's theory that he was fired because of his race. Plaintiff
19 presents evidence that Magnus made deeply offensive comments regarding African-Americans
20 and Latinos. Plaintiff submits testimony that Magnus stated he preferred to work with officers
21 who looked like him (Threets Dep., pp. 71, 79–81). In addition, plaintiff submits evidence that,
22 unlike plaintiff, the non-Asian officers who illegally transferred firearms to plaintiff were not
23 terminated from their employment due to the illegal transfers.

24     Assuming for the sake of argument that plaintiff met his initial burden to show a prima
25 facie case of discrimination, defendants submit more than enough evidence to meet their burden
26 under *McDonnell Douglas* to show a legitimate basis for the employment decision. The City

---

[2] Plaintiff's complaint includes a generic reference to gender discrimination but provides no factual allegations to support a claim for gender discrimination.

8

1  determined that plaintiff had battered his former spouse, placed a condom on her door, and then
2  lied to investigators about it (Dickerson Decl., Exh. E). A "substantial showing" by plaintiff is
3  required at the pretext stage. *Decker v. Barrick Goldstrike Mines, Inc.*, No. 14-15051, 2016 WL
4  1128176, at *1 (9th Cir. Mar. 23, 2016). Plaintiff fails to make a "substantial showing" that his
5  termination was a pretext. A reasonable trier of fact could not conclude that plaintiff was
6  terminated for discriminatory reasons.

### *(2)  FEHA Retaliation Claim.*

Our court of appeals has stated that to establish a prima facie case of FEHA retaliation, a plaintiff must demonstrate: (1) a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action. *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1034–35 (9th Cir. 2006).

If a plaintiff has established a prima facie retaliation claim, the burden shifts to the defendant to articulate a legitimate nondiscriminatory reason for the adverse employment action. If the defendant articulates such a reason, a plaintiff may defeat summary judgment by offering direct or circumstantial evidence that a discriminatory reason more likely motivated the employer to take the adverse employment action or that the employer's proffered explanation is unworthy of credence and a pretext for discrimination. *Surrell v. California Water Serv. Co.*, 518 F.3d 1097, 1106 (9th Cir. 2008).

In his opposition to defendants' motion for summary judgment, plaintiff asserts a new theory of retaliation. Plaintiff alleges that he repeatedly complained that his former spouse was creating a hostile work environment. Plaintiff's new theory of discrimination is not asserted in the First Amended Complaint. A plaintiff may not raise new theories for the first time on summary judgment this late in litigation. *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006). As such, the complaint did not put defendants on notice about the evidence it would need to defend against plaintiff's new allegations. This order finds that plaintiff failed to provide defendants with adequate notice of these allegations. Plaintiff's new theories will therefore be disregarded.

What remains is plaintiff's assertion that he was fired in retaliation for allegedly making complaints about sexual harassment by Magnus and for allegedly refusing to lie in the course of an investigation. In a declaration, plaintiff states that, after Magnus allegedly made a sexual advance, plaintiff reported the incident to his supervisor, Threets (Hauschild Decl. ¶ 8). Defendants submit testimony from Threets that plaintiff never reported any such incident to him (Threets Decl. ¶¶ 3). Plaintiff's evidence that he was asked to lie in the course of an investigation but refused to do so is similarly thin. He submits only his own declaration.

Assuming for the sake of argument that plaintiff met his initial burden to show a prima facie case of discrimination, defendants submit more than enough evidence to meet their burden under *McDonnell Douglas* to show a legitimate basis for the employment decision. The City determined that plaintiff had battered his former spouse, placed a condom on her door, and then lied to investigators about it (Dickerson Decl., Exh. E).

A "substantial showing" by plaintiff is required at the pretext stage. *Decker v. Barrick Goldstrike Mines, Inc.*, No. 14-15051, 2016 WL 1128176, at *1 (9th Cir. Mar. 23, 2016). Plaintiff fails to submit a "substantial showing" that his termination was a pretext. A reasonable trier of fact could not conclude that plaintiff was terminated in retaliation for alleged complaints he made about an alleged sexual advance.

### C. Section 1983 Claims.

#### *(1) Due Process Claims.*

In December of 2013, plaintiff opted to submit his appeal of his dismissal to binding arbitration and concurrently waived his right to a Personnel Board hearing (Dkt. 20, Ex. A). Plaintiff also previously dismissed his due process claims under the California Constitution.

Plaintiff contends that he is *not* asserting a "due process claim involving the adequacy of the pre- or post-termination remedies in this case, or his liberty interest." Rather, he contends that he has a property interest in the "existing state law rule or understandings [including] the procedural protections contained in POBR, including the one-year limitations period."

This order declines to hold that plaintiff has a property interest in the one-year statute of limitations. To be sure, plaintiff had a property interest in his employment. Here, however,

plaintiff waived his rights to post-termination proceedings by opting to submit his appeal of his dismissal to binding arbitration and concurrently waiving his right to a Personnel Board hearing. Plaintiff thereby waived his ability to bring a due process claim based on the termination of his employment. *Ramirez v. Cty. of Marin*, 578 F. App'x 673, 676 (9th Cir. 2014) (plaintiff cannot complain about defect in pre-termination hearing when the plaintiff did not take advantage of the available post-termination process). Plaintiff's back-door effort to evade the preclusive effect of his waiver is unconvincing. Plaintiff's motion for summary judgment as to his due process claim is **DENIED**. Defendants' motion for summary judgment as to plaintiff's due process claim is **GRANTED**.

### *(2) First Amendment Retaliation Claim.*

As an initial matter, it should be noted that plaintiff asserts entirely new theories to support his First Amendment retaliation claim in his opposition to defendants' motion for summary judgment. Plaintiff asserts that his First Amendment claim is supported by complaints he made "about the criminal misconduct of his former spouse" and his "refusal to lie during the course of a racial discrimination complaint" (Opp. at 24).

Plaintiff's new theory of retaliation is not reflected in the First Amended Complaint.[3] A plaintiff may not raise new theories for the first time on summary judgment. *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 969 (9th Cir. 2006). As such, the complaint did not put defendants on notice about the evidence they would need to defend against plaintiff's new allegations. This order finds that plaintiff failed to provide defendants with adequate notice of these allegations. Plaintiff's new theories will be disregarded.

What remains under the First Amendment retaliation claim is plaintiff's assertion that he was fired in retaliation for making complaints about alleged sexual harassment by Chief Magnus and for refusing to lie in the course of an investigation.

A First Amendment retaliation claim involves a five-step analysis: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen

---

[3] Defendants also assert that plaintiff's responses to interrogatories also did not reflect these new allegations (Reply at 3).

11

or public employee; (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action; (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech.

Plaintiff's evidence of protected speech is thin. In a declaration, he avers that he made a complaint to his supervisor, Threets, about an alleged sexual advance by Magnus. The supervisor remembers no such thing. Plaintiff further avers that Magnus demanded he lie in connection with an investigation and that plaintiff refused to do so. These statements are uncorroborated by any other evidence.

Nonetheless, assuming arguendo that plaintiff complained to Threets, and that he refused to lie during an investigation, the City would have taken the same employment action regardless — and reasonably so.

For the reasons described above, defendants make a substantial showing that the City had a legitimate basis for the employment decision. A reasonable trier of fact could not conclude that plaintiff was terminated in retaliation for a complaint he made about an alleged sexual advance or for his alleged refusal to lie.

### (3) *Monell Claim.*

Plaintiff has presented no evidence that the City of Richmond maintains a custom, policy, or practice of retaliating against employees who make complaints of public concern. As such, defendants' motion for summary judgment is **GRANTED**.

### 2. JUDICIAL NOTICE.

Defendants ask the Court to take judicial notice of a judgment in a 2006 lawsuit against Magnus and the City of Richmond in the Superior Court of Contra Costa. Defendants contend that all of the alleged derogatory statements by Magnus relate back to this 2006 lawsuit brought by African-American officers, including Lieutenant Threets. This order declines to take judicial notice of the judgment because it is impossible to know if the lawsuit arose from the same statements alleged here.

**CONCLUSION**

1  For the foregoing reasons, plaintiff's motion for summary judgment as to his POBR and
2 due process claim is **DENIED**. Defendants' motion for summary judgment is **GRANTED IN**
3 **PART**: defendants' motion for summary judgment as to plaintiff's POBR claim is **DENIED**;
4 defendants' motion for summary judgment as to plaintiff's FEHA claims for discrimination is
5 **GRANTED**; defendants' motion for summary judgment as to plaintiff's FEHA claims for
6 retaliation is **GRANTED**; defendants' motion for summary judgment as to plaintiff's due process
7 claim is **GRANTED**; defendants' motion for summary judgment as to plaintiff's First
8 Amendment retaliation claim is **GRANTED**; and defendants' motion for summary judgment as to
9 plaintiff's *Monell* claim is **GRANTED**. Plaintiff's remaining claim is his claim for violation of
10 POBR.

**IT IS SO ORDERED.**

Dated: June 24, 2016.



WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

13